# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION



**UNITED STATES OF AMERICA,**

    **Plaintiff,**

v.

**JOSE R. TELLEZ, LAZARA TELLEZ, and GECU,**

    **Defendants**.

EP-08-CV-303-KC

## ORDER

On this day, the Court considered Defendant Jose R. Tellez's and Defendant Lazara Tellez's ("Defendants") "Motion to Set Aside Default Judgment" ("Motion") (Doc. No. 28). For the reasons set forth herein, Defendants' Motion is **GRANTED**.

**I. BACKGROUND**

On August 5, 2008, the Government filed a Complaint seeking a judgment against Defendant Jose R. Tellez "for the unpaid balance of certain federal taxes plus statutory additions and to enforce tax liens of the United States." United States of America's Compl. ("Complaint") ¶ 1.[1] In particular, the Government sought to enforce a tax lien, stemming from "the fourth quarter of 1996 of the Albert Tellez Construction[] Co.," against real property located in El Paso Texas. *Id.* ¶¶ 8, 11. The Complaint noted that "[w]hile [Defendant Jose R. Tellez] claims the property as his homestead, it is believed that he does not actually reside there." *Id.* ¶ 13.

---

[1] The Government named Defendant Lazara Tellez (Defendant Jose R. Tellez's wife) and GECU because they "may claim an interest in the property described [in the Complaint]." *Id.* ¶¶ 6-7.

The Government filed proof of service as to Defendants on September 9, 2008. *See* Summons in a Civil Action (Doc. Nos. 9-10). On December 10, 2008, after Defendants failed to file responsive pleadings, the Government filed a Motion for Entry of Default and a Motion for Default Judgment against Defendants. *See* United States' Mot. for Clerk's Entry of Default Against Defs. Jose and Lazara Tellez (Doc. No. 14); United States' Mot. for Default J. Against Jose and Lazara Tellez and Br. (Doc. No. 13). After the Clerk of Court entered default, this Court granted default judgment against Defendants and issued a final judgment authorizing the sale of the real property described in the Complaint.[2] *See* Clerk's Entry of Default (Doc. No. 17); Am. Order, Jan. 23, 2009 (Doc. No. 21); Final J. (Doc. No. 24) at 2.

On June 11, 2009, Defendants filed a Motion to set aside the default judgment against Defendants and to reinstate this case. Mot. 1.[3] In their Motion, Defendants argue that they had no actual knowledge of the Government's claims until the seizure and sale of their property was imminent. *Id.* at 2-3, 5. Although Defendants do not challenge the Government's service of process, they point out that the Government filed another tax-related suit against Defendants in the El Paso Division of the United States District Court for the Western District of Texas on July 23, 2008, two weeks prior to filing the Complaint in this case. *Id.* at 2. In that case, styled *United States v. Tellez*, No. 3:08-cv-00276-PRM (W.D. Tex.) ("*Tellez II*"), the Government sought to enforce an IRS summons involving income tax liability for the years 2002-2006. *See* Pet. to Enforce Internal Revenue Summons (Doc. No. 1), *Tellez II*; *id.* Ex. F. at 1. Defendants state that they mistakenly believed that the service of process in this case related to *Tellez II*, and

---

[2] The final judgment also resolved the Government's Complaint as to GECU. *See* Final J. (Doc. No. 24) at 1.

[3] While Defendants' Motion is captioned as a motion to set aside the default judgment, the Court assumes that Defendants also seek to set aside the entry of default and the final judgment, both of which are necessary to reinstate this case.

that the Government at no point informed either Defendants or Defendants' counsel that this case was pending. *Id.* at 3. Defendants also argue that the Government improperly sought to foreclose on their property before considering alternative means of settling Defendant Jose R. Tellez's tax liability, and that, in any event, Defendants' particular circumstances make the equitable remedy of foreclosure inappropriate. *Id.* at 4-8. On July 7, 2009, this Court held a hearing on Defendants' Motion, in which counsel for all parties were present.

## II. DISCUSSION

### A. Standard

Relief from entry of default and relief from default judgment are distinct remedies. Federal Rule of Civil Procedure 55(c) provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." FED. R. CIV. P. 55(c). As relevant here, Rule 60(b) provides that a default judgment may be set aside for "mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b)(1).[4] Nevertheless, "[c]ourts apply essentially the same standard to motions to set aside a default and a judgment by default, [though] the former is more readily granted than a motion to set aside a default judgment." *Matter of Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992) (footnote omitted).

Relief from default is within the discretion of the district court. *See Bonanza Int'l, Inc. v. Corceller*, 480 F.2d 613, 614 (5th Cir. 1973) (citing *Moldwood Corp. v. A. B. Stutts*, 410 F.2d 351 (5th Cir. 1969)). In reviewing the exercise of that discretion, the Fifth Circuit has "adopted a policy in favor of resolving cases on their merits and against the use of default judgments . . . ." *Rogers v. Hartford Life and Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999) (quotations omitted). Accordingly, "when there are no intervening equities[,] any doubt should, as a general

---

[4] Rule 60(b) contains five other grounds for relief from a final judgment. Defendants did not argue for relief under any of those grounds.

proposition, be resolved in favor of the movant . . . ." *Lacy v. Sitel Corp.*, 227 F.3d 290, 291 (5th Cir. 2000) (quoting *Gen. Tel. Corp. v. Gen. Tel. Answering Serv.*, 277 F.2d 919, 921 (5th Cir. 1960)).

"In determining whether to set aside a default decree, the district court should consider whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." *Dirschke*, 975 F.2d at 183 (quoting *United States v. One Parcel of Real Property*, 763 F.2d 181, 183 (5th Cir. 1985)). However, "[t]he[se] three factors . . . are not talismanic," and courts may rely on other factors. *Id.* "Whatever factors are employed, the imperative is that they be regarded simply as a means of identifying circumstances which warrant the finding of 'good cause' to set aside a default." *Id.*

B. **Analysis**

The Court will consider the three factors stated in *Dirschke* before considering which other factors, if any, are particularly relevant to Defendants' Motion.

a. **Whether Defendants' default was willful**

Defendants argue that their default was a result of a mistaken belief that this case "was part of [another] pending case." *See* Tr. of Oral Argument ("Transcript") at 15; *see also* FED. R. CIV. P. 60(b)(1). The Government contends that Defendants did in fact know about this case and intentionally chose to ignore it. *See* Tr. at 23 ("It did not seem to [Government's counsel] that [Defendant Jose R. Tellez] had any confusion about the two cases."). If the Government is correct that the Defendants were aware of this case, then the Defendants' default was willful and the Court may, but need not, consider other factors before declining to set aside the default judgment. *See Dierschke*, 975 F.2d at 184; *see also Dimmit v. Ockenfels*, 407 F.3d 21, 24 (1st

Cir. 2005) (when defaulting party was aware of pending case, "protestations of good faith . . . do not suffice").

Resolving any doubts in Defendants' favor, the Court concludes that Defendants have shown that their default was a result of reasonable mistake. The record shows that the Government brought two separate actions against Defendants; that the two actions were commenced less than two weeks apart; that the actions were brought before different Judges in the same federal district and division; and, most unusually, that both actions involved Defendants' tax liability.[5] *Compare* Compl. 1 (filed August 5, 2008, in this Court, and involving "unpaid balance of certain federal taxes"), *with* Pet. to Enforce Internal Revenue Summonses (Doc. No. 1) at 1-2, *Tellez II* (filed July 7, 2008, before the Honorable Philip R. Martinez, and involving "tax liabilities or [] the collection of the tax liability of [Defendants]"). This Court is unaware of any other instance where a party's civil liability led the Government to simultaneously hale that party into adjoining courtrooms, and this fact alone speaks to the reasonableness of Defendants' mistake. At most, Defendants' ignorance of this case was negligent, and this alone does not suffice to establish willful default. *See, e.g.*, *Batson v. Neal Spelcs Assocs.*, 765 F.2d 511, 514 (5th Cir. 1985) ("dismissal may be inappropriate . . . when a party's simple negligence is grounded in confusion"); *New York v. Green*, 420 F.3d 99, 108 (2d Cir. 2005) ("willfulness in the context of a judgment by default requires something more than mere negligence") (quotation omitted).

Any doubts the Court may have as to whether Defendants actually knew about this case are mitigated by Defendants' appearance in *Tellez II* and the fact that Defendants reached an

---

[5] The parties conceded at oral argument that the cases were not related such that the Government was required to furnish additional notice upon Defendants or seek to consolidate the cases. *See* Tr. 15.

agreement with the Government to dismiss *Tellez II* while this case remained pending. *See* Agreed Order of Dismissal (Doc. No. 19), *Tellez II*. Moreover, the *Tellez II* record shows no indication that Defendants knew about this case or that the Government, during the course of several hearings, ever apprised them that it was pending. *See Trs. of Show Cause Hearing* (Doc. Nos. 20-22), *Tellez II* (hearings held August 25, 2008, September 2, 2008, and November 25, 2008); *cf. Lacy*, 227 F.2d at 293 ("at no time did [non-defaulting party] ever disabuse [defaulting party] of its mistaken belief that service had not yet been effected"). In the absence of any direct evidence of Defendants' knowledge of this case, and in light of the reasonableness of Defendants' confusion regarding two cases pending against them at one time, the Court is loath to uphold a default and default judgment and thus enforce "a severe sanction reserved for extreme conduct." *Meade v. Grubbs*, 841 F.2d 1512, 1520 (10th Cir. 1988) (collecting cases); *see also Arthur F. Williams, Inc. v. Helbig*, 208 F.R.D. 41, 43 (E.D.N.Y. 2000) (default judgment "must remain a weapon of last, rather than first resort") (quotation omitted).

Alternatively, the Government argues that it has shown "beyond peradventure" that Defendants' counsel was aware of the existence of two separate actions. Tr. 21. The Government's primary evidence on this point is a letter sent to Defendants on May 30, 2008, several months before the Government filed its Complaint, stating that it "has been authorized and directed to file suit" against Defendants, *see* Gov't's Ex. 1, and Defendants' counsel's response to that letter, sent October 1, 2008, stating that Defendants' counsel "understand[s] [the Government is] seeking to reduce [Defendants'] tax lien to a judgment, foreclose that judgment and sell [Defendants'] home," *id.* Ex. 6. It is true as a general matter that "clients must be held accountable for the acts and omissions of their attorneys." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396 (1993). Even so, the Government conceded at oral

argument that it was unclear whether Defendants' counsel's letter shows that he was actually aware of this case. Tr. 29. Defendants' counsel's letter, sent after the Complaint in this case was filed, could have referred only to the Government's May 30, 2008, letter to Defendants, which was sent before an actual lawsuit was pending or even imminent. Tr. 29.[6] Accordingly, the Court also lacks direct evidence showing that Defendants' default was willful because their attorney was aware of this case. Resolving any doubts in favor of granting Defendants' Motion, Defendants' counsel's failure to inquire about the existence of this case was at most excusable neglect. *See* FED. R. CIV. P. 60(b)(1); *see, e.g.*, *Easley v. Kirmsee*, 382 F.3d 693, 698 (7th Cir. 2004) (in some circumstances, "attorney carelessness can constitute 'excusable neglect' under Rule 60(b)(1)") (quotation omitted).

As with Defendants, any doubts this Court may harbor about whether Defendants' counsel was actually ignorant of this case or whether his ignorance constitutes excusable neglect are mitigated by his appearance on Defendants' behalf in *Tellez II* and the subsequent agreed dismissal of that case.[7] As Defendants' counsel stated at oral argument: "I'm here. I was in the other suit . . . . There can be no doubt that I want to represent the taxpayers and they want me to

---

[6] The Government also points to a Power of Attorney which Defendants' counsel sent to the Government on October 1, 2008, as evidence that Defendants' counsel was aware of this case. *See* Tr. at 24. That Power of Attorney was specifically limited to income tax matters for the years 2000-2007, which was the subject matter of *Tellez II*. *See* Tr. 37; Gov't's Ex. 5 at 2. By contrast, the tax matter at issue in this case involves withholding taxes for the year 1996. *See id.* 24-25. If anything, the Power of Attorney cuts against the Government's position.

[7] If, as the Government alleges, Defendants' counsel did know about the existence case but appeared in *Tellez II* without so informing the Government or his clients, his actions may constitute sufficient grounds to set aside the default judgment under the "extraordinary circumstances" ground of Rule 60(b)(6). *See McCallon v. Thomas*, No. 02-573 SECTIONL "J"(5), 2003 U.S. Dist. LEXIS 1453, at *6 n.1 (E.D. La. 2003) (discussing circuit courts' consideration of whether gross negligence of an attorney constitutes grounds to set aside default). Because the Court does not find gross negligence here, however, it need not reach that issue.

represent them." Tr. 34.  Resolving all doubts in favor of Defendants, the Court cannot conclude that their default was willful.  Accordingly, this factor cuts strongly in favor of setting aside the default judgment.

b. **Whether setting the default aside would prejudice the Government**

The Government did not mention at oral argument how it would be prejudiced if Defendants' Motion were set aside.  Without further information, the Court is reluctant to speculate as to possible prejudice beyond the readily-apparent fact that the Government would now be required to litigate this case on the merits.  Such "prejudice," however, is borne by any non-defaulting party when a default judgment is set aside, and is consequently insufficient.  *See, e.g.*, *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1224-25 (9th Cir. 2000) ("[Non-defaulting party] would have lost a quick victory. . . .  But such prejudice is insufficient to justify denial of relief under Rule 60(b)(1)").  Moreover, the Fifth Circuit has specifically held that "mere delay alone does not constitute prejudice" sufficient to set aside a default judgment.  *Lacy*, 227 F.3d at 293; *cf. KPS & Assocs. v. Designs by FMC, Inc.*, 318 F.3d 1, 15 (1st Cir. 2000) ("in the context of a Rule 55(c) motion, delay in and of itself does not constitute prejudice").  Because the Government has not made any specific showing of prejudice, this factor also cuts in favor of granting Defendants' Motion.

c. **Whether Defendants presented a meritorious defense**

If the defaulting party "fail[s] 'to present a meritorious defense sufficient to support a finding on the merits,'" a court acts "within its discretion in refusing to grant relief from a default judgment." *In re OCA, Inc.*, 551 F.3d 359, 370 (5th Cir. 2008) (quoting *Jenkins & Gilchrist v. Groia & Co.*, 542 F.3d 114, 119-120 (5th Cir. 2008)).  If a meritorious defense is presented, however, setting aside a default judgment comports with the "policy in favor of resolving cases

on their merits." *Rogers*, 167 F.3d at 936. Thus, relief from default may be denied "when the movant is unable to show the existence of a defense of sufficient merit to indicate the possibility that the outcome would differ upon retrial." *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 403 (5th Cir. 1981).

Defendants have convincingly shown that a different outcome is possible if their default is set aside. The Government's Complaint states that sale of the property at issue is necessary to satisfy the tax debt of Defendant Jose R. Tellez but that Defendant Lazara Tellez – who, as far as the Court knows, does not have outstanding tax liability – "may claim an interest in the property." Compl. ¶¶ 1, 6. Such circumstances, or where the "judicial sale[] implicate[s] the interest of third parties with independent possessory rights in the property being sold," "only strengthen[] the case for the existence of judicial discretion in [actions to foreclose on federal tax liens]." *United States v. Rogers*, 461 U.S. 677, 707 (1983). After considering those rights, "the exercise of limited equitable discretion in individual cases can take into account both the Government's interest in prompt and certain collection of delinquent tax *and the possibility that innocent third parties will be unduly harmed by that effort.*" *Id.* (emphasis added). Defendants argue that the Court may restrain the Government from foreclosure because Defendants Lazara Tellez would be unduly harmed by the loss of her home. *See* Mot. 4-5. Though that result is far from certain, the existence of a non-debtor spouse with a possessory interest in the property to be foreclosed at the very least "indicates the possibility," *see Seven Elves*, 635 F.2d at 403, that the foreclosure may be averted.

The Government argues that the property at issue is not Defendant Lazara Tellez's home and that, even if it is, she does not own the property. Neither argument negates the possibility of a different result upon retrial. As to whether Defendant Lazara Tellez lives in the property to be

foreclosed, the Government points to joint tax returns filed by Defendants listing a different address as their home. Tr. 19. Defendants counter that the address listed on the tax return is "where they want the[ir] correspondence [with] the IRS to come." *Id.* at 32. While Defendants' tax returns are probative, the Court notes Defendant Lazara Tellez has filed a sworn affidavit stating, in no uncertain terms, that she "ha[s] lived in this house all of [her] life." Lazara Tellez Aff. (Doc. No. 30-3) at 2. Especially in light of Defendant Lazara Tellez' individual and unambiguously worded affidavit, the address Defendants jointly marked on their tax returns does not conclusively establish whether the property to be foreclosed Defendant Lazara Tellez' home and does not invalidate Defendants' meritorious defense.

Similarly, the Government's doubts as to whether Defendant Lazara Tellez owns the property to be foreclosed do not militate against setting aside the default. The Government's claim rests on the fact that the warranty deed for the property "shows the grantee and sole owner as being Mr. Tellez." Tr. 22. However, the Government does not dispute that Defendants were married on the date of the deed and has not clarified the scope of Defendant Lazara Tellez's consequent rights in the property. Moreover, the Government's claim that there is no possibility of equitable relief because the property at issue belongs only to Defendant Jose R. Tellez rings hollow in light of the Government's own Complaint, which states that Defendant Lazara Tellez "may claim an interest" in the property to be foreclosed. Compl. ¶ 6. The scope of that interest, and whether Defendant Lazara Tellez would be unduly harmed by foreclosure, are issues which are better determined in adversary proceedings. Accordingly, this factor also weighs in favor of setting aside Defendants' default.

d. **Other considerations**

Perhaps the most compelling argument against allowing the default judgment to stand is

the nature of the remedy sought. "The desire to avoid judgments by default when substantial rights are involved is parallel by a reluctance to permit them when . . . injunctive relief is requested." *See* 11A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 2693 (2d. ed. 1995). The Court can scarcely imagine a situation where greater care should be taken to avoid an unjust result through default judgment than in a foreclosure proceeding involving the interest of a non-debtor spouse. "Speedy termination of litigation, sometimes invoked as sufficient reason to deny the motion [to set aside default], is not the end, but means, to justice . . . ." *Keeler Bros. v. Yellowstone Valley Nat'l Bank*, 235 F. 270, 270 (D. Mont. 1916). Because the Court does not find that Defendants' default was willful, does not find prejudice to the Government, and finds that Defendants have presented a meritorious defense, the Court declines to favor speedy termination of litigation at the expense of possible injustice.

   e. **Entry of default**

"Courts apply essentially the same standard to motions to set aside a default and a judgment by default, [though] the former is more readily granted than a motion to set aside a default judgment." *Dierschke*, 975 F.2d at 184 (footnote omitted). Accordingly, because Defendants have shown the Court why the default judgment against them should be set aside, they have *a fortiori* shown "good cause" to set aside the entry of default. Fed. R. Civ. P. 55(c).

III. **CONCLUSION**

For the reasons outlined above, Defendant Jose R. Tellez's and Defendant Lazara Tellez's "Motion to Set Aside Default Judgment" **(Doc. No. 28)** is **GRANTED**. The Clerk of Court's Entry of Default **(Doc. No. 17)**; this Court's Amended Order of Default Judgment,

entered Jan. 23, 2009 **(Doc. No. 21)**; and this Court's Final Judgment **(Doc. No. 24)** are hereby **SET ASIDE**.

All Defendants in this case are hereby ordered to serve their answer to the Government's Complaint within **twenty days** after the date of this Order. *See* Fed. R. Civ. P. 12. All parties are ordered to confer for the purposes described in Federal Rule of Civil Procedure 26(f) within **sixty days** after the date of this order. Within **ten days** thereafter, the parties shall jointly file a memorandum of the proscribed by Appendix A of the Court's Standing Order on Pretrial Deadlines.

**SO ORDERED**.

**SIGNED** on this 13th day of July, 2009.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE