IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
|   Plaintiff, | § | |
| | § | |
| v. | § | EP-08-CV-303-KC |
| | § | |
| JOSE R. TELLEZ, and LAZARA TELLEZ, | § | |
| | § | |
|   Defendants. | § | |

# ORDER

On this day, the Court considered Defendants' "Motion for Summary Judgment" ("Motion") (Doc. No. 45), Plaintiff's "Opposition to Defendants' Motion for Summary Judgment" ("Response") (Doc. No. 46) and Defendant's "Reply to United States [sic] Opposition to Defendant's Motion for Summary Judgment" ("Reply") (Doc. No. 49). For the reasons set forth below, the Motion is **DENIED**.

## I.    BACKGROUND

The facts of this case have been set out in this Court's Order dated July 13, 2009, ("Order") (Doc. No. 40), which set aside earlier orders of default judgment and final judgment in this case. To summarize these facts briefly, the United States is seeking to seize and sell a house[1] belonging to Defendants Jose and Lazara Tellez, in order to satisfy a tax lien concerning certain unpaid taxes owed by Jose Tellez individually, which stem from the 1996 tax year. *See* Order 1-3; *see also* 26 U.S.C. § 7403 (providing for such seizures and sales). The Tellezes object to this seizure and sale

---

[1] The house in question is located at 8134 Knowles Way, El Paso, Texas. *See* Gov't Ex. 1 (Doc. No. 42).

and assert that the house in question is their homestead under Texas law. *See* Mot. 2. They claim that Lazara Tellez's homestead rights are protected in federal tax sale circumstances – even if Jose Tellez's interest, as the delinquent taxpayer, is subject to seizure. *See* Reply 5. While disputing the factual claim that the house at issue is indeed the Tellezes' homestead, the government acknowledges that, as a matter of law, homestead rights of a non-delinquent spouse, such as Lazara Tellez, are protected when proceedings are brought against the delinquent spouse. *See* Order 9-10 (recounting the dispute over whether the house is, in fact, the Tellezes' homestead); *see also* United States' Resp. to Proposed Undisputed Facts (Doc. No. 47) ¶ 5 (acknowledging that a non-delinquent spouse's interest in a homestead is protected).

The parties dispute, however, the nature and extent of that protection. The government argues that it may seize the house, sell it, and protect Lazara Tellez's interest simply by dividing the proceeds with her under a certain formula. *See id.* The Tellezes argue that the Court, under its powers of equity, should not allow the sale to go forward, and should instead allow Lazara Tellez to buy out Jose Tellez's share of the property and have him remit the proceeds to the government, which would then release its claim on the house. Reply 5. The Tellezes have moved for summary judgment seeking an order compelling the government to accept a settlement offer of the sort outlined above. *See generally* Mot.; *see also* Reply 4-5 (waiving an earlier argument that the case should be dismissed entirely, seeking only relief in the form of a chance to buy out husband's equity in lieu of a forced sale).

## II.  DISCUSSION

### A.  Standard of Review

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). The substantive law identifies which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Ellison*, 85 F.3d at 189.

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996). If the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). The nonmovant's burden may not be satisfied by "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Warfield*, 436 F.3d at 557 (quoting *Freeman v. Texas Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004)). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### B. Protection of Homesteads

The Tellezes argue that the house in question is their homestead under Texas law. *See* Mot.

3. As such, Lazara Tellez claims she has certain spousal rights to the house and, as a non-delinquent taxpayer, these rights should be protected in the event that her husband's interest is seized for his delinquent taxes. Reply 1. The Supreme Court has recognized that the statutes allowing the government to seek judicial foreclosure on a family home for back taxes must be construed to protect spousal homestead rights in order to conform with the Constitution's protection of private property and due process. *See United States v. Rodgers*, 461 U.S. 677, 703-04 (1983) (discussing homestead estates created by Texas law in the context of a 26 U.S.C. § 7403 sale).

But the Supreme Court has held that the government *may* seize and sell a homestead belonging to a couple where only one partner is delinquent on taxes; in such a case, the non-delinquent spouse's interest is adequately protected by receiving cash compensation for the fair value of the lost homestead estate.[2] *Id.* The Supreme Court has qualified that rule – effectively making it the bare minimum standard – by observing that "financial compensation may not always be a completely adequate substitute for a roof over one's head." *Id.* at 704. A district court is therefore empowered to employ its discretionary powers of equity, subject to various limits and guidelines, to decide whether a sale and division of proceeds is adequate in a given case, or whether some alternative remedy is in order. *Id.* at 709-10. Following *Rodgers*, district courts have been creative in structuring equitable remedies which seek to protect a non-delinquent spouse's interest in the family home while also expropriating the delinquent spouse and providing a cash recovery for the government. *See, e.g., United States v. Jones*, 877 F. Supp. 907, 916-21 (D.N.J. 1995) (expropriating tax-delinquent husband's share of a family home, rendering wife and government

---

[2] The methods for calculating the exact dollar value of the lost homestead estate are explored more fully in *Harris v. United States*, 764 F.2d 1126 (5th Cir. 1985) (discussing the valuation of homestead estates created by Texas law).

tenants-in-common, and requiring wife to pay a fair rent for occupying government's half of the estate); *see also United States v. Tanchak*, 07-CV-1475(FLW), 2009 WL 348270, at *7 (D.N.J. Feb. 5, 2009) (holding that the equities of that case did not favor a foreclosure sale, and that a *Jones*-type arrangement was appropriate).

In this connection, this Court observes that the question of whether the house is the Tellezes' homestead is subject to dispute. The Tellezes claim that it is, while the government claims that another house in El Paso is their usual residence, and therefore the house at issue here should not be considered their homestead under Texas law. *See* Order 9-10. When this Court first encountered this question, the Tellezes' prevailed because the Court held that the conflicting evidence proffered by both parties made it clear that they were not certain to lose on the question of whether the house was their homestead – this made them eligible to have the default judgment set aside. *Id.* But at the same time, the Court did not hold that the Tellezes were destined to win on this issue; instead, it was debatable and required more evidence, which is still the case. *Id.* The conflicting evidence offered so far is this: The Tellezes brought an affidavit declaring that the house at issue was their homestead under Texas law, while the government brought evidence showing that they used a different home address on their tax returns, and would regularly sign in person for return-receipt mail sent to that other address. *Id.* As virtually no further evidence or explanation has been submitted on this question, the Court continues to hold that it cannot now be resolved in favor of either party. The Tellezes have not demonstrated that there is no genuine issue of material fact regarding the issue of whether the house is their homestead, and are thus not entitled to summary judgment on this threshold issue.[3]

---

[3] The Tellezes have filed a document with the Court which appears to be a database report from the local real estate tax rolls that pertains to the house at issue in this suit. *See* Defs.'

Without an answer to this question, the Court cannot determine whether to treat the house as simple communal property or as a protected homestead entitled, at a minimum, to a special buyout price for the non-delinquent spouse in the event of a tax foreclosure. *See Harris v. United States*, 764 F.2d 1126, 1129-32 (5th Cir. 1985). Moreover, the facts underlying the house's homestead status are also relevant to the Court's assessment of whether the equities of this case favor a sale followed by cash compensation, or whether they tilt towards blocking the sale in favor of a mandated settlement. A Texas homestead is established by overt acts of homestead usage, and intention on the part of the landowner to make the property a homestead. *See Sanchez v. Telles*, 960 S.W.2d 762, 769-70 (Tex. Ct. App. 1997). A homestead can also be established through a formal declaration or filing, as provided by state statute. *Id.* A property may lose its homestead character through the "abandonment" of the homestead in favor of another place of permanent residence. *Id*. If the house is indeed Lazara Tellez's homestead, there is an increased likelihood of displacement and hardship to her if a sale is permitted, which are factors that the Supreme Court would weigh against allowing a sale. *See generally Rodgers*, 461 U.S. at 710-12. If, however, the government can prove that she abandoned her homestead rights in this house (or never initially established it as a homestead), then the government will also likely show facts which tend to prove that the displacement and hardship involved in a sale would be considerably reduced. Even if the government cannot show abandonment under Texas law, an attempt to do so may bring to light

> Ex. 7 (Doc. No. 41). It has the symbol "T" written down near the field marked "Homestead," which suggests that the Tellezes have been claiming this residence as their homestead for real estate tax purposes – whether or not the government can rebut such a claim of homestead by a showing of abandonment remains an open question. Fundamentally, as no discussion or explanation of this evidence has been placed before the Court by the parties for the purposes of this Motion, the Court declines to decide the matter on the basis of such thin inferences.

facts which at least bear on the question of the equities in this case.

Finally, the Court must observe that several other gaps in the record preclude an entry of summary judgment at this time. The parties have not sufficiently briefed or submitted evidence concerning the value of the house[4] and the value of each spouse's purported homestead estate in it. The Court thus has no way of ascertaining what the government could expect to realize from selling the house and dividing the proceeds under the *Harris* rule. Accordingly, even if the Court were inclined to grant equitable relief along the lines requested by the Tellezes, the Court has no way of fixing a buyout price which would leave the government as whole as it would be if it actually went through with the sale. Similarly, the Court has no information before it which would allow it to fix a rental price, in the event the Court decided that a *Jones*-type remedy is appropriate.

## III. CONCLUSION

For the reasons set forth above, the Motion is **DENIED**.

**SO ORDERED.**

**SIGNED** on this 27th day of January, 2010.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE

---

[4] The database report discussed at footnote 3 does have a "total value" of $83,719 recorded for this house. Whether this value was an accurate reflection of market value at the time of the report (as opposed to being an assessed value for real estate tax purposes only), and whether it is an accurate reflection of market value at the present time is not discussed by the parties or known to the Court.