# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | EP-08-CV-303-KC |
| § | |
| JOSE R. TELLEZ, et al., § | |
| § | |
| Defendants. § | |

## ORDER

The government brought this suit on August 6, 2008, seeking to seize and sell a property described as Tract 18-D-1 Block 15, Ysleta Grant, an addition to the City of El Paso, El Paso County, Texas, whose address is 8134 Knowles Way, El Paso, Texas ("the Property"). *See* Am. Compl., ECF No. 7. The Property allegedly belongs to Jose Tellez, at least in part. *Id.* The government is seeking to sell the Property to satisfy a tax lien concerning certain unpaid taxes owed individually by Jose Tellez. *See id.* ¶ 8; *see also* 26 U.S.C. § 7403 (providing for such seizures and sales).

In January 2009, the Court entered default judgment against Jose Tellez and his wife Lazara Tellez ("Jose" and "Lazara"; collectively, "Tellezes"). Order, Jan. 14, 2009, ECF No. 18. Several months later, in June 2009, the Tellezes objected to the seizure and sale, *see* Mot. to Set Aside Default Judgment, ECF No. 28, and the Court set aside the default judgment. *See* Order, July 13, 2009. The Tellezes' subsequent defense during two rounds of summary judgment motions and at trial has been that Lazara has a share of a homestead interest in the Property under Texas law, and that the government should not be allowed to liquidate her homestead interest because she is not liable for the taxes at issue. *See* Defs.' Answer ¶ 11, ECF No. 43.

The Tellezes have also asserted that the Property is Jose and Lazara's community property through their common law marriage. *Id.*; Defs.' Mot. for Summ. J. ¶ 5, ECF No. 45; *see also* Defs.' 2d Mot. for Summ. J. 3 n.6, ECF No. 59. During the year and a half of pretrial motions, the government did not contest the issue. Gov't's Resp. to Defs.'s Mot. for Summ. J. 2, ECF No. 46. But in its trial preparation filings, the government withdrew its proposed stipulation as to Lazara's community property ownership, and instead stated its position to be that "[t]he United States agrees with GECU that Lazara Tellez has **no** interest in this property." Gov't's Trial Prep. "Section C" Material 3, ECF No. 100 (emphasis in original).

GECU was joined as a defendant in this case because it had a lien on the property to secure a mortgage issued to Jose Tellez. Def. GECU's Resp. to Gov't's Mot. for Summ. J. ¶¶ 11-13, ECF No. 81. GECU asserted at the beginning of the case that its held a purchase money mortgage, and therefore its lien on the Property was superior to the government's lien. *Id.* Neither the government nor the Tellezes ultimately disputed this assertion. *See* Defs.' Jose and Lazara Tellez's Trial Prep. "Section C" Material 3-4, ECF No. 101; Def. GECU's Section C Am. Trial Prep. Order Compliance 3, ECF No. 102. However, on May 20, 2011, GECU represented to the Court that it had released its lien and asked that it be dismissed from the case. Mot. to Dismiss GECU, ECF No. 105. Consequently, with neither the government nor the Tellezes objecting to GECU's motion to be dismissed, the Court dismissed GECU as a defendant on June 3, 2011. *See* Order, June 3, 2011, ECF No. 109.

The Court determined by summary judgment that Jose owes the United States in excess of $58,825.69 for unpaid taxes. Order 11, Mar. 25, 2011, ECF No. 92. The Court also determined that the government has a valid lien for the same amount against all of Jose's real and personal property, including the Property. *Id.*

On May 26, 2011, the Court held a trial on the merits of this case. Having reviewed the evidence on the record, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.[1]

## I. FINDINGS OF FACT

The Court finds the following facts:

1. Jose is the sole owner of the Property, and to the extent that he is married to Lazara the Property is Jose's separate property.

2. Jose currently resides at 520 Martha Way, El Paso, Texas ("520 Martha Way"), so as to care for his sister and elderly parents who live at 529 Martha Way.

3. Jose operates a business out of the Property.

4. Lazara has worked intermittently at the business operated by Jose Tellez.

5. Jose and Lazara listed their address on their 2005, 2006, and 2007 tax returns and IRS Forms W-2 as 520 Martha Way. The tax returns for all three years were filed in April 2008.

6. Jose and Lazara listed their address on their 2003 and 2004 tax returns as 8134 Knowles Way. The tax returns for 2003 and 2004 were filed in November 2008.

7. Jose filled out an IRS form in March 2008 indicating he had lived at 520 Martha Way for twenty-six years.

## II. CONCLUSIONS OF LAW

In light of the foregoing findings, the Court makes the following conclusions of law.

### A. Governing Law

The government brought this action pursuant to I.R.C. § 7403, which provides that the

---

[1] To the extent that any finding of fact is more aptly characterized as a conclusion of law, or any conclusion of law is more aptly characterized as a finding of fact, the Court adopts it as such.

United States may bring an action to enforce a tax lien. Section 7403 states that in such an action,

> The court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States.

I.R.C. § 7403(c).

The nature and validity of parties' claims to property that is subject to a tax lien are governed by state law. *United States v. Rodgers*, 461 U.S. 677, 683 (1983) ("[I]t has long been an axiom of our tax collection scheme that, although the definition of underlying property interests is left to state law, the consequences that attach to those interests is a matter of federal law."). The placement of the burden and weight of proving the validity of such claims is also a matter of state law. *See Computer Econ., Inc. v. Gartner Grp., Inc.*, 50 F. Supp. 2d 980, 990-91 (S.D. Cal. 1999) ("State rules that define the elements of a cause of action, affirmative defenses, presumptions, burdens of proof, and rules that create or preclude liability are so obviously substantive that their application in diversity actions is required.") (citing, inter alia, *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 109-11 (1945) (federal court must apply state law specifying length of applicable statute of limitations); *Dick v. N.Y. Life Ins. Co.*, 359 U.S. 437, 446-47 (1959) (federal court must apply state law presumptions and burdens of proof); *Woods v. Interstate Realty Co.*, 337 U.S. 535, 538 (1949) (federal court must apply state statute precluding corporations not qualified to do business in state from filing suit)).

Under Texas law, a homestead is a "family home or place of business . . . exempted from the reach of most creditors," and the "'owner or claimant of the property claimed as a homestead may not, if married, sell or abandon the homestead without the consent of the other spouse.'" *Rodgers*, 461 U.S. at 684-85 (quoting Tex. Const. art. XVI, § 50). A homestead interest is an estate in land,

4

rather than just an economic right. *Dominguez v. Castaneda*, 163 S.W.3d 318, 329 (Tex. App. 2005) (citing *Sanchez v. Telles*, 960 S.W.2d 762, 769 (Tex. App. 1997); *Laster v. First Huntsville Props. Co.*, 826 S.W.2d 125, 129 (Tex. 1991)). If a homestead is established by a couple, it has the effect of "'reducing the underlying ownership rights in [the property] to something akin to remainder interests and vesting in each spouse an interest akin to an undivided life estate in the property.'" *Id.* at 329-330 (quoting *Sanchez*, 960 S.W.2d at 769). The burden is on the individual or couple asserting the homestead interest to establish that they have such an interest, and to do so they must "show a combination of both overt acts of homestead usage and the intention . . . to claim the land as a homestead." *Id.* at 330 (citing *Sanchez*, 960 S.W.2d at 770). Mere ownership of a property alone is insufficient to establish it as a homestead, as is mere residence; it is "[p]ossession and use of land by one who owns it and who resides upon it [that] makes it the homestead in law and fact." *Id.* at 331 (citing *Sanchez*, 960 S.W.2d at 770; *Silvers v. Welch*, 91 S.W.2d 686, 688 (Tex. 1936)).

If a court determines that a party who is not liable to the government for unpaid taxes has an interest in property subject to a tax lien, that court may prevent the government from conducting a forced sale. *Rodgers*, 461 U.S. at 706. Proceedings under § 7403 are proceedings in equity, and "some limited discretion is left in the statute for the exercise of reasoned discretion." *Id.* This discretion is not "unbridled," however. *Id.* at 709. When deciding whether to protect an innocent third party's interest by preventing foreclosure, a "certain fairly limited set of considerations will almost always be paramount." *Id.* at 709-10. These factors include prejudice to the government from preventing a forced sale, whether the third party could expect that the property would be subject to forced sale by the debtor or the debtor's creditors, the prejudice to the third party from being dislocated or undercompensated by a forced sale, and the character and value of the third

5

party's interest relative to the debtor's interest. *Id.* at 710-11. These four factors are not exhaustive, however, and are not to be applied as a mechanical checklist. *Id.* at 711.

### B. Analysis

Having already established by summary judgment that Jose Tellez is indebted to the United States for an amount in excess of $58,000 and that the United States has a valid lien against Jose's interest in the Property for the same amount, and having dismissed GECU based on its representation that it no longer has an interest in the property, the Court proceeds to examine the only interests the remaining Defendants have asserted: Lazara's community property interest in the ownership of the Property and her share of the Tellezes' alleged homestead interest in the Property.

#### 1. Lazara's community property interest

The Court concludes that Lazara has no community property interest because the Tellezes introduced no evidence of such ownership at trial. Lazara's asserted community property interest in the Property could only exist through marriage to Jose, and the Tellezes have previously argued that Jose and Lazara have a common law marriage. *See* Defs.' 2d Mot. for Summ. J. 3 n.6 (admitting the Tellezes were divorced in 1991, but alleging that they subsequently became common law married in 2001). To prove a common law marriage in Texas, one must show the putative spouses agreed to be married, cohabited as husband and wife after making the agreement, and held themselves out as married. *Russell v. Russell*, 865 S.W.2d 929, 932 (Tex. 1993). The evidence in the trial record concerning these elements consists of references by Jose to Lazara as his wife, testimony that Jose and Lazara filed their federal taxes jointly as a married couple during the 2003 to 2007 tax years, and references to Jose and Lazara living at 520 Martha Way during those tax years. There is also some conflicting evidence on the issue of cohabitation, in that Lazara apparently spent considerable time staying at 529 Martha Way to care for sick family members.

6

Based on this record, the Court cannot conclude that Jose and Lazara have a common law marriage. The tax returns are sufficient to prove the Tellezes' held themselves out as married, and the conflicting evidence might establish cohabitation, but there is no evidence of an agreement by Jose and Lazara to be married. The Court might use the evidence of cohabitation and 'holding out' as circumstantial evidence of an agreement, but sufficient proof of cohabitation and 'holding out' is not necessarily sufficient proof of an agreement. *See id.* at 933. Because Lazara did not testify at trial and Jose did not discuss the issue in his testimony, there is no other evidence in the record from which to deduce whether Lazara agreed to marry Jose. Therefore, the Court finds there is insufficient evidence of an agreement by Jose and Lazara to be married, and so the Court cannot find that Jose and Lazara have a common law marriage.

Even if the Court were willing or able to conclude from the record that Jose and Lazara do have a common law marriage, that would not change the outcome. "All property, both real and personal, of a spouse owned or claimed before marriage . . . shall be the separate property of that spouse . . . ." Tex. Const. art. XVI, § 15; *Parnell v. Parnell*, 811 S.W.2d 267, 269 (Tex. App. 1991) (property deeded to one spouse one month before marriage found to be that spouse's separate property). To find Lazara has a community property interest, then, the Court must determine when the Tellezes became married and when Jose acquired the Property. The earliest beginning date for the marriage supported by the trial record is April 2008, since that is the date the Tellezes filed their 2003 tax return, which is the first evidence of the Tellezes' holding themselves out as married. Alternatively, the Court might credit the Tellezes' assertion in their second summary judgment motion that they began living together as common law husband and wife on September 15, 2001. *See* Defs.' 2d Mot. for Summ. J. 3 n.6. But the evidence at trial indicated that Jose Tellez acquired the Property on August 6, 2001. On its face, then, even giving the Tellezes the benefit of the doubt

and looking outside the trial record, Jose's ownership of the property predates the marriage, and thus the Property is his separate property. *See Parnell*, 811 S.W.2d at 269. This is corroborated by Jose's testimony at trial that he alone was the owner of the Property. Therefore, even if the Tellezes are validly married at present, without proof that they were married when Jose acquired the Property, the Court cannot find that Lazara has a community property interest in the Property.

It is possible that the Tellezes did not contest the community property issue at trial because they believed it had already been determined by the Court. *See* Defs.' Jose and Lazara Tellez's Trial Prep. "Section C" Material 3. The Court did describe the Property in its summary judgment orders as belonging to both Jose and Lazara, but this was not a ruling, merely a description of the background facts based on the absence of any disagreement on the point. *See* Order 1, Jan. 27, 2010, ECF No. 51 ("To summarize these facts briefly, the United States is seeking to seize and sell a house belonging to Defendants Jose and Lazara Tellez"); Order 1, Mar. 25, 2011, ECF No. 92 ("The government seeks to seize and sell a house belonging to Defendants Jose and Lazara Tellez"). The Court never formally adjudicated the issue of Lazara's community property interest. Nor could the Court have impliedly granted summary judgment for the Tellezes on the issue, since the Court denied both of the Tellezes' summary judgment motions. Additionally, even if the Tellezes believed that the issue had been settled by the Court's prior rulings, the Tellezes never argued that point to the Court in response to the government's assertion just before trial that Lazara held no interest in the property whatsoever. And Lazara never appeared at trial to assert her community property interest, and did not even observe the proceedings. In light of all the evidence at trial, the Court concludes that the Tellezes have failed to establish that Lazara has a community property interest in the Property.

    **2.**    **Lazara's undivided share of the homestead interest**

The Court similarly has little difficulty in concluding from the trial record that the Lazara has no homestead interest in the Property. For Lazara to have a share in the homestead, she must be married to Jose and they must have together made the Property their homestead. *See Denmon v. Atlas Leasing, L.L.C.*, 285 S.W.3d 591, 596 (Tex. App. 2009) ("the claim of a family homestead is not maintainable by a man and woman living together in an unmarried state") (citing *Tremaine v. Showalter*, 613 S.W.2d 35, 37 (Tex. App. 1981); *Cadle Co. v. Ortiz*, 227 S.W.3d 831, 836 (Tex. App. 2007) ("a person is permitted to hold homestead rights in his or her *spouse's* separate property") (emphasis added). The Tellezes held the burden at trial of proving the existence of a homestead. *See Dominguez*, 163 S.W.3d at 330. To meet this burden, the Tellezes had to show both residence on and ownership of the Property. *See id.* at 330.

Leaving aside the lack of evidence of a valid marriage, which is set forth above, the Tellezes failed to carry the burden of proving the existence of a homestead. They called only one witness, Jose, and were able to admit no documentary evidence. The Tellezes did establish that Jose owns the Property, but there is no indication that Jose or Lazara ever lived on the Property. Jose testified that his "home" was at the Property, but he also stated that he was living elsewhere. "[T]he word 'home' is not necessarily synonymous with 'homestead,'" *Dominguez*, 163 S.W.2d at 331 (citing *Sanchez*, 960 S.W.2d at 912); to establish a property as a homestead a family must own the property, live on it, and intend for it to be their homestead. *Id.* Lacking any evidence that Jose or Lazara ever lived on the Property after Jose acquired title to it, the Court concludes that the Tellezes failed to meet their burden of proving the Property is their homestead.

Moreover, even if the government, as Plaintiff, had the burden of proving the Property were not a homestead, the Court would find it carried that burden. Jose testified that he currently resides at 520 Martha Way, not at the Property. Jose filled out a form indicating to the IRS that he had resided at 520 Martha Way for twenty-six years. Gov't's Ex. A, at 1, ECF No. 108. The only use

9

of the Property he discussed at trial was using it as a home business, as evidenced by his requests for home business permits from the City of El Paso. Jose also admitted that he and Lazara listed 520 Martha Way as their address on numerous tax returns and W-2 forms, and that he had received mail there. In light of this testimony, the government has effectively disproved the Tellezes' claimed homestead interest.

The record indicates that since acquiring the home, Jose and Lazara lived on other properties in the neighborhood to care for their sick relatives, and that they only used the Property as a place of business. Texas law does provide for a variant on the homestead known as a business homestead, but that type of interest is still only available if an individual or family uses a property *both* as a home and a business. Tex. Const. art. XVI, § 51 (urban homestead must be "used for the purposes of a home, or as both an urban home and a place to exercise a calling or business, of the homestead claimant"). It is also true that temporarily living away from a homestead for health reasons will not necessarily constitute abandonment of a homestead. *See Churchill v. Mayo*, 224 S.W.3d 340, 345 (Tex. App. 2006) (citation omitted). But in this case, without evidence that the Tellezes ever lived on the Property to begin with, there was never a homestead to abandon. That the Tellezes have apparently only lived elsewhere since Jose acquired the property is itself sufficient to defeat any notion that the Property became the Tellezes' homestead.

In light of all the evidence introduced at trial, the Court must conclude that the Property is not the Tellezes' homestead, so Lazara necessarily also does not have any share of a homestead interest. With no one besides Jose holding any interest in the Property at this point, the government should be allowed to proceed with a forced sale.

### 3. Equitable factors

Even if the Property were a homestead, or if Lazara were to have some other ownership interest, the Court would still allow a forced sale to occur. Section 7403 gives the Court the

10

discretion to prevent a forced sale, but that discretion is limited. *See Rodgers*, 461 U.S. at 706. The factors the Court should consider when deciding to exercise its limited discretion to prevent a forced sale are

> (1) the extent to which the Government's financial interest will be prejudiced if it were relegated to a forced sale of the partial interest (rather than a sale of the whole property with the proceeds divided among the competing interests); (2) the innocent third party's legally recognized expectation that his or her interest in the property would not be subject to a forced sale; (3) the prejudice to the third party from replacing the homestead interest with proceeds, including the costs of dislocation; and (4) the relative character and value of the liable and non-liable interests in the property.

*United States v. Caraway*, No. A-06-CA-972-SS, 2008 WL 2510668, at *4 (W.D. Tex. Apr. 24, 2008) (citing *Rodgers*, 461 U.S. at 710-711).

The Court finds that the balance of these equitable factors does not favor preventing a forced sale. First, as have other courts in the Western District, the Court finds "[t]he sale of a partial interest in the residence would bring far less money than the United States could expect to receive from a sale of the whole residence with proceeds divided among the interested parties - a single-family residence is simply not the type of property that lends itself to a partial sale." *Caraway*, 2008 WL 2510668, at *4. Second, while under Texas homestead law Jose could not sell any portion of the Property without Lazara's consent, *see* Tex. Const. art. XVI, § 50(b), since *Rodgers* it has been clear that a federal tax lien could result in a forced sale. *See Caraway*, 2008 WL 2510668, at *4. Third, since there is no indication that Lazara presently resides on the Property, there would be no prejudice to replacing her interests in the Property, if any, with the value of those interests as a share of the proceeds of the sale. And fourth, any interest Lazara might have in the Property with Jose would be shared equally with Jose, so the relative character and value of Lazara's interest would not favor preventing a forced sale. None of the factors favors the exercise of the Court's discretion to prevent a sale, so the government should be allowed to proceed.

In concluding that Lazara has no homestead interest in the Property, indeed no ownership

interest in the property whatsoever, and that the government should be allowed to conduct a forced sale, the Court notes that the Tellezes' counsel's presentation of evidence at trial was decidedly deficient. Counsel for the Tellezes failed to present a single admissible piece of documentary evidence, and what little testimonial evidence he elicited from Jose was wholly inadequate to carry the Tellezes' burden. Counsel failed to elicit any testimony on the subject of whether the Tellezes have ever lived at the property, or present any evidence on the issue of whether Lazara has any community property interest in the ownership of the Property by virtue of her marriage to Jose. Because of this inability or refusal to present a case, the Court's determination here is based on almost no evidence; the trial provided the Court with little better understanding of the factual circumstances underlying this dispute than did the various motions filed by the parties over the past three years.

The absence of evidence for the Court to consider is troubling, given the protracted length of the proceedings before trial. Since the beginning of this case the Tellezes' defense to forced sale has been Lazara's homestead interest. However, Lazara did not even attend the trial, much less testify. Additionally, the Tellezes' counsel mustered several affidavits and documentary evidence to support its case at the summary judgment stage, but did not seek to introduce any of that evidence at trial. At present, it appears that the thin trial record is either a result of the Tellezes' counsel's exceedingly poor trial skills or proof that the Tellezes and their counsel have been asserting a defense for two years that had no basis in law or fact. Either way, the Tellezes' counsel should think twice before employing a similar litigation strategy in the future.

### III. CONCLUSION

For the foregoing reasons, the Court enters the following orders:

1. The Court **DECLARES** that the property located at Tract 18-D-1 Block 15, Ysleta Grant,

an addition to the City of El Paso, El Paso County, Texas, whose address is 8134 Knowles Way, El Paso, Texas, is not the homestead of Jose or Lazara Tellez.

2. **IT IS ORDERED** that the United States' lien against Jose R. Tellez is foreclosed against the property located at Tract 18-D-1 Block 15, Ysleta Grant, an addition to the City of El Paso, El Paso County, Texas, whose address is 8134 Knowles Way, El Paso, Texas.

3. **IT IS FURTHER ORDERED** that the property located at Tract 18-D-1 Block 15, Ysleta Grant, an addition to the City of El Paso, El Paso County, Texas, whose address is 8134 Knowles Way, El Paso, Texas, will be sold pursuant to an Order for Sale to be entered by the Court.

4. Within one week of the date of this Order, the United States **SHALL** file a verified supplemental schedule of the total amount owed by Jose R. Tellez for the taxes at issue in this case.

5. Within one week of the date of this Order, the United States **SHALL** submit a proposed Order upon which Final Judgment may be entered, detailing the conditions of the foreclosure sale and the division of proceeds.

**SO ORDERED.**

**SIGNED** on this 6th day of June, 2011.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE